UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BROOKE MCINTYRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22-CV-265-KAC-CHS |
| | ) |
| FIRST UNUM LIFE INSURANCE | ) |
| COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on (1) the "Motion for Judgment on the Administrative Record" [Doc. 24] filed by Defendants First Unum Life Insurance Company and Unum Group Corp. (collectively "Unum"); (2) Plaintiff Brooke McIntyre's "Motion for Judgment on ERISA Record" [Doc. 26]; and (3) the Report and Recommendation [Doc. 33] issued by United States Magistrate Judge Christopher H. Steger (the "Report"). The Report recommends that the Court grant Defendants' Motion [Doc. 24], deny Plaintiff's Motion [Doc. 26], and enter Judgment in favor of Defendants. Plaintiff objected to the Report [Doc. 34]. Defendants Responded [Doc. 36]. And Plaintiff replied [Doc. 37]. For the below reasons, the Court grants Defendants' Motion [Doc. 24], denies Plaintiff's Motion [Doc. 26], and accepts and adopts the relevant portions of the Report [Doc. 33].

**I. Background**

    **A. Factual Background**

The facts in the Report, [*see* Doc. 33 at 2-12], are accurate and not in dispute, [*see* Docs. 34, 36]. Therefore, the Court accepts and adopts the factual portion of the Report without objection.

1

*See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2).  However, the Court briefly reiterates the most salient points and where applicable notes additional relevant facts.

Plaintiff worked as a "Supervisor Social Work[er]" at New York Presbyterian Hospital [Doc. 21-7 at 353].  Her position was sedentary [*See* Docs. 25 at 1-4; 27 at 1-2].  The job involved "[l]ight to [s]edentary physical activity" with "complex reasoning, critical thinking, and frequent reading of written or digital records" [Doc. 21-7 at 633].  Plaintiff worked "as the supervisor for five social workers" and provided "clinical supervision to social workers working toward clinical licensure" [Doc. 21-5 at 215].  In her role at the Hospital, Plaintiff participated in an insurance plan managed by Unum.  Plaintiff's insurance plan included policies for long-term disability ("LTD") and life insurance without premiums ("LWOP") [*See* Doc. 21-6 at 1-48].  At the relevant time, Plaintiff also "ha[d] a second job, as an adjunct professor at Fordham University" teaching online [*See* Doc. 21-8 at 538].

On November 2, 2020, Plaintiff was "rear-ended" by another vehicle while driving on the highway [*See* Doc. 21-9 at 552].  Five hours later Plaintiff went to the emergency room, where she "reported no loss of consciousness" and "denied any dizziness, difficulty walking, chest pain, shortness of breath, nausea, vomiting, or abdominal pain" [*Id.*].  Plaintiff's "only . . . [complaint was] a mild frontal headache" [*Id.*].  "The neurologic examination was normal . . . [and medical professionals deemed a] CT scan of the head . . . unnecessary" [*Id.*].  Adam Leonetti D.O. treated Plaintiff at the Emergency Room [*See* Doc. 21-7 at 578-587].  Dr. Leonetti discovered no major symptoms requiring immediate treatment [*See id.* at 581-587].  He instructed Plaintiff to follow up within five (5) to seven (7) days if her symptoms persisted or worsened [*See* Doc. 21-8 at 538].

On November 17, 2020, Plaintiff sought telemedicine treatment from Nurse Practitioner ("NP") Carol Carbone, CRNP (internal medicine) for post-concussion symptoms that arose while

Plaintiff was teaching an online class [*See* Doc. 21-8 at 206, 210, 206-248]. Plaintiff reported several symptoms; including headaches, ocular impairments, dizziness, cognitive difficulties, and fatigue [Doc. 21-7 at 110-11, 113]. NP Carbone diagnosed Plaintiff with "[c]oncussion without loss of consciousness" [Doc. 21-8 at 206]. But the tests NP Carbone performed on Plaintiff yielded results within the normal range [*See* Doc. 21-7 at 111-13]. NP Carbone referred Plaintiff to physical therapy [*See id.* at 115].

NP Carbone treated Plaintiff until April 6, 2021, with Plaintiff making positive progress [*See id.* at 90-91, 104-107: 21-8 at 241-42; 381]. By April 6, 2021 Plaintiff reported that she suffered no "dizziness, blurred vision, eye discomfort, . . . [or] headache . . . [and that her g]aze stability is not provocative for dizziness, burred [sic] vision, fleeting eye discomfort, [or] headache" [Doc. 21-8 at 381]. NP Carbone (1) noted that Plaintiff reported to have "75-80 % of improvement since initial incident," (2) assessed that Plaintiff could "sustain her work for longer periods of time", and (3) assessed that Plaintiff overall's condition continued to improve [*See id.* at 389-90]. Plaintiff reported that she was "working 10-15 hours weekly at Fordham" [*Id.* at 389]. At no time did NP Carbone refer Plaintiff for a neurological scan or MRI [*See, e.g.*, Doc. 21-8 at 393]. By April 6, 2021, NP Carbone did not limit Plaintiff from conducting regular daily tasks because Plaintiff was "significantly improving" [*See id.* at 393].

NP Carbone referred Plaintiff to Heidi Sensenig, OD "due to persistent visual symptoms post concussive injury" [*See, e.g., id.* at 226-27]. Dr. Sensenig began treating Plaintiff on December 5, 2020 and continued through November 2021 [*Id.* at 249, 463]. Plaintiff initially reported symptoms of blurred vision, dizziness, and headaches [*See id.* at 249, 463]. Dr. Sensenig recommended that Plaintiff receive vision therapy three (3) times a week for several months [*See id.* at 418]. By April 13, 2021, Plaintiff reported "significant symptoms improvement since

3

her initial evaluation" [*Id.*]. Her ocular results were within the normal range [*Id.* at 419-20]. At no point did Dr. Sensenig restrict Plaintiff from driving [*See, e.g., id.* at 249, 418-20, 463, 474].

Alicia Reiser, OTD began treating Plaintiff on January 15, 2021 [*Id.* at 886]. Dr. Reiser treated Plaintiff with various therapies, including vision remediation and cognitive therapy, and reduced Plaintiff's screen time [*See id.* at 887-89]. Dr. Reiser treated Plaintiff twice a week for twelve (12) weeks [*Id.* at 889]. By March 8, 2021, Plaintiff reported that she was "starting to feel like my old self again, not 100% but much more like how I used to feel" [Doc. 21-9 at 239]. In fact, Plaintiff reported that she "taught her online zoom class" at Fordham and "was able to do so without memory aids or feeling stressed or needing to take as many breaks as she did when she taught" before the accident [*Id.*]. And it appears that at some point in April 2021, Dr. Reiser informed Plaintiff that it was "up to . . . [her] when . . . [she] want[s] to go back to NY" to work at the Hospital [*See* Doc. 21-7 at 251]. By April 29, 2021, Dr. Reiser noted that Plaintiff reported "she had been making steady progress" and that Plaintiff had partially met or resolved many of Dr. Reiser's "long term" goals for her treatment; including reduced dizziness, lack of headaches, and overall improvement [Doc. 21-9 at 86].

Teresa Duda, LCSW first saw Plaintiff on March 2, 2021 for "anxiety, fatigue, pain, forgetfulness, hypervigilance when driving, sensitivity to light and sound, [and] feeling more emotional" [Doc. 21-8 at 629]. At that appointment, Duda noted that Plaintiff's quality of thought was "logical and goal oriented," her concentration, and judgment were "good," and her attention was "sufficient" [*Id.* at 632]. Duda treated Plaintiff through September 29, 2021 [*Id.* at 851]. Duda placed no restrictions on Plaintiff's daily activities [*See, e.g., id.* at 629, 632, 851-54].

At some point after the accident, Plaintiff requested LTD and LWOP benefits under her Unum policies [*See* Doc. 21-5 at 110]. Those policies required Plaintiff to have a qualifying

4

"disability" to receive benefits [*See* Doc. 21-5 at 57-58 (LWOP Policy Definition of Disability); Doc. 21-4 at 13-14 (LTD Policy Definition of Disability)]. As the Report notes, the Parties "do not assert that there are any differences in the definition of 'disability'" that are "material to this action" [*See* Doc. 33 at 2-3]. They "treat the standard for denying or granting [Plaintiff's] claims as being the same" under both polices [*Id.* at 3]. The Court, therefore, accepts the Parties' representation and agreement and "treat[s] the standard for denying and granting [Plaintiff's] claims as being the same" under the policies [*Id.*].

As relevant here, the LTD policy defines a qualifying "disability" as when the insured is "**limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**" [*See* Doc. 21-4 at 13 (LTD Policy Definition of Disability)]. In addition, to receive benefits, the insured "must be continuously disabled through your elimination period," which "is 180 days" [*Id.*]. "Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period" [*Id.*]. "The days that you are not disabled will not count toward your elimination period" [*Id.*].[1] The insured is only entitled to benefits if she meets this standard [*See id.* at 13-14]. At bottom, the Parties agree that Plaintiff must show that she was "continuously disabled" for 180 days, her elimination period, to obtain benefits [*Id.*]. Plaintiff's elimination period began November 2, 2020 [*See, e.g.*, Doc. 21-9 at 523].

The policy for LTD benefits also outlines the "Appeal Procedures" that apply if Plaintiff receives an "adverse benefit determination" [*See* Doc. 21-6 at 42]. An insured has "180 days from receipt of notice of an adverse benefit determination to file an appeal" [*Id.*]. After an insured submits a "written request for review" of a denial of benefits, Unum will make "[a] decision on

---

[1] Neither Party presented argument regarding potential applicability of the thirty-day carve out provision here [*See* Docs. 24-31, 34, 36, 37].

review" within "45 days" [*See id.*]. "If Unum determines that special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). Unum will notify you in writing if an additional 45 day extension is needed." [*Id.*]. The text of the policy warns that if Unum requests information and the insured "fail[s] to deliver the requested information within the time specified, Unum may decide your appeal without that information" [*Id.*].

On July 29, 2021, Unum declined to approve Plaintiff's initial request for LTD and LWOP benefits [*See* Doc. 21-5 at 237, 245]. Stuart Russell, DO/MPH and Neal Greenstein, M.D. each reviewed the medical documents and materials Plaintiff submitted, including records from NP Carbone, Dr. Sensening, and Dr. Resier [*See* Docs. 21-7 at 790, 799-801; 21-9 at 512; 21-5 at 238]. Upon review, both doctors concluded that Plaintiff could have recovered within ninety (90) days of her November 20, 2020 accident and that she failed to show that she was eligible for benefits [*Id.*]. Unum informed Plaintiff that each of their reviewing physicians independently concluded that she was not "continuously disabled" for the elimination period [Doc. 21-5 at 237-49]. Unum provided that Plaintiff could appeal the decision within 180 days [*Id.* at 241, 248].

On January 25, 2022, Plaintiff timely appealed [*See id.* at 256]. She also timely submitted additional records and documentation in support of her appeal [*Id.* at 256-66, 294]. Steven Winkel, D.O. reviewed the materials Plaintiff submitted in support of her initial request for benefits and the medical records and documents she timely submitted in support of her appeal [Doc. 21-9 at 490-94, 523]. Dr. Winkel concluded that it was his "medical opinion that the medical records available for my review do not document physical, diagnostic, or imaging findings to preclude the insured from performing the sedentary occupation demands as outlined above on a full-time basis

6

from 11/2/2020 through 4/30/2021" [*Id.* at 490-94]. He thus agreed with the initial conclusions of Dr. Russell and Dr. Greenstein that Plaintiff did not have a qualifying "disability" [*Id.*].

On February 15, 2022, Unum sent Plaintiff a letter indicating that it determined Plaintiff was not disabled and supplying the rationale for that decision [*Id.* at 555]. Unum informed Plaintiff that the letter was not a denial of her appeal and that she had the right to review and timely respond [*See id.*]. But the letter informed Plaintiff that any "response must be received by us no later than March 2, 2022" [*Id.*]. "Any provided information should be time relevant to when the elimination period ended on April 30, 2021" [*Id.*].

Plaintiff faxed a letter to Unum on February 22, 2022 requesting "an additional 30 days" to respond [*See id.* at 562]. On February 28, Unum denied that request [*Id.* at 564]. On March 1, Plaintiff faxed another letter reiterating her initial extension request. Plaintiff did not submit any further materials by the March 2, 2022 deadline [*See id.* at 567, 571, 583-85].

On March 4, 2022, Unum denied Plaintiff's claim [*See id.* at 571]. In the denial, Unum included information pertaining to Unum's "Initial Claim Decision," the "Appeal Decision," "Information that Supports the Appeal Decision," Unum's "Response to your Concern(s)," the "Policy Provisions that apply to the Appeal Decision," and "Next Steps Available" [*Id.*].

On March 23, 2022, after Unum's denial, Plaintiff submitted further materials to Unum, including medical records, a headache log, and letters of support [*See id.* at 583-85]. Thereafter, on March 28, 2022 Unum informed Plaintiff that it had reviewed the additional materials she submitted and "the additional information you submitted does not change our prior appeal decision" [*Id.* at 640]. That letter too included information pertaining to the "Decision," "Reason" for the decision, "Information that Supports" the decision, and "Next Steps Available" [*Id.*]. But Unum did more. Unum further reviewed the materials Plaintiff submitted on March 23 and on

May 3, 2022 Unum informed her that Unum's denial was final [*See* Doc. 21-10 at 894-95].[2] Unum also provided a specific rationale regarding why her additional materials did not persuade the reviewers [*See id.*].

### B. Procedural History

Plaintiff filed a Complaint under the Employment Retirement Income Security Act of 1974 (ERISA) for LTD and LWOP benefits [Doc. 1 at 9-10]. She alleged that Unum's denial of her claims "breach[ed] . . . the plan[s]," was "arbitrary and capricious," and was "not supported by substantial evidence in the record" because she "became disabled" [Doc. 1 ¶¶ 68, 76; 70, 78; 71, 79; 66, 74]. Defendants filed a "Motion for Judgment on the Administrative Record" [Doc. 24] asking the Court to "dismiss Plaintiff's claim for benefits" and "affirm" Defendants' benefits "determination" [Doc. 24 at 1]. Defendants asserted that their decision to deny Plaintiff benefits "considered the totality of the evidence . . . and rightly concluded that the evidence did not support a finding of disability under the LTD and LWOP policies" [Doc. 25 at 2]. Plaintiff too filed a "Motion for Judgment on ERISA Record," asserting that she "establishe[d] that she is disabled" [*See* Doc. 26 at 1].

The Report recommends that the Court grant Defendants' "Motion for Judgment on the Administrative Record" [Doc. 24] and deny Plaintiff's "Motion for Judgment on ERISA Record" [Doc. 26]. Plaintiff timely objected to the Report [Doc. 34]. Her objections track closely to arguments raised in her "Motion for Judgment on ERISA Record" [Doc. 26]. ***First***, Plaintiff asserts that the Court erred in concluding that Defendants fulfilled their fiduciary duty to provide a full and fair review of the claim on appeal [*See* Doc. 34 at 2]. ***Second***, Plaintiff asserts that the

---

[2] Unum's letter notes that it received the materials "[o]n April 26, 2022" [*Id.*]. But those materials appear to be a portion of the materials Plaintiff submitted on March 23, 2022 [*See id.*].

8

Court erred by adopting Defendants' file reviewer's conclusions without properly weighing the record [*See id.*]. **Third**, she asserts that the Court erred by failing to overturn Defendants' denial on de novo review, and alternatively that the Court erred by not remanding the case [*See id.*].

II. **Analysis**

Under 28 U.S.C. § 636(b)(1), in reviewing the Report, the undesigned "may accept, reject, or modify, in whole or in part, the findings or recommendations made." 28 U.S.C.§ 636(b)(1)(C). The Court reviews objected-to portions of the Report de novo. *See* 28 U.S.C. § 636(b)(1)(C).

Under 28 U.S.C. § 1132(a)(1)(B), the Court applies either a de novo or an arbitrary and capricious standard of review when assessing an ERISA claim. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022). Here, the Parties agree that the de novo standard applies [*See* Docs. 14 at 2; 25 at 18-19; 27 at 18-19]. The Court therefore reviews Unum's denial of Plaintiff's LTD and LWOP claims de novo.[3] *See Tranbarger v. Lincoln Life & Annuity Co. of N.Y.*, 68 F.4th 311, 313-14 (6th Cir. 2023); *see also Quarles v. Hartford Life & Accident Ins. Co.*, No. 3:15-CV-00372-CRS-CHL, 2019 WL 1290891, at *9 (W.D. Ky. Mar. 20, 2019) (applying de novo review because "[t]he Parties . . . stipulated . . . [that] de novo review" applies).

The Court reviews both "the factual determinations" and "the legal conclusions of the plan administrator" de novo. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir. 1997)). The Court considers the record before the plan administrator at the time of the final decision. *Id.* at 615 (citing *Perry v.*

---

[3] The Court notes that the LTD and LWOP policies appear to give Unum the "discretionary authority to make benefit determinations under the plan," including "determining eligibility for benefits," "resolving factual disputes, and interpreting and enforcing the provisions" of each policy [*See* Docs. 21-2 at 53; 21-3 at 67; 21-5 at 89]. But because Defendants prevail under the more arduous de novo standard, the Court does not address this issue.

9

*Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). To succeed on her ERISA claims, Plaintiff has the burden to "prove by a preponderance of the evidence" that she eligible for benefits under the terms of the policies. *See Messing v. Provident Life & Accident Ins. Co.*, 48 F.4th 670, 678 (6th Cir. 2022) (quoting *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014)).

### A. The Report Correctly Concluded That Defendants Fulfilled Their Fiduciary Duty By Providing A Full And Fair Review.

Plaintiff's first two objections are based on the materials she submitted and the timing of Defendants' review of those materials [*See* Doc. 34 at 4-6, 7-8]. ***First***, Plaintiff argues that the Report improperly determined that Unum was not required to review her late March 23, 2022 submission [*Id.* at 4]. That argument is imprecise at best. The Report did not "seek[] to add a limitation to a claimant's response that is not present in the text" of 29 C.F.R. § 2560.503-1(h)(4) [*Id.*]. The Report, in dicta, merely noted a flaw in Plaintiff's argument [*See* Doc. 33 at 15-16]. Regardless, that objection is unavailing because Defendants gave Plaintiff all the procedure she was due under 29 C.F.R. § 2560.503-1(h)(4). *See Balmert v. Reliance Std. Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010) (describing "essential procedural requirements for a full and fair review").

Section 2560.503-1(h)(4) outlines claims procedures that a plan must provide to give a claimant "a reasonable opportunity for a full and fair review of a claim and adverse benefit determination." *See* 29 C.F.R. § 2560.503-1(h)(4). As relevant here, "before the plan can issue an adverse benefit determination on review on a disability benefit claim ***based on a new or additional rationale***," the plan must provide that new or additional rationale to the claimant and give her "a reasonable opportunity to respond." *See id.* § 2560.503-1(h)(4)(ii) (emphasis added).

Here, Defendants did just that. On February 15, 2022, on review of Plaintiff's appeal, Defendants provided their further assessment that Plaintiff was not disabled and supplied the "new

10

Case 1:22-cv-00265-KAC-CHS    Document 38    Filed 08/15/25    Page 10 of 17
PageID #: 8853

or additional rationale" for that determination from Dr. Winkel [*See* Doc. 21-9 at 555]. They then gave Plaintiff until March 2, 2022 to timely respond to the determination [*Id.*]. That period of time was "reasonable" given the fact that Defendants had already given Plaintiff 180 days to prepare and file her appeal, consistent with the terms of her policies, and Defendants had a general obligation, under the terms of the policies, to respond to her appeal within forty-five (45) days [*See* Doc. 21-6 at 42]. Further, Dr. Winkel's opinion was generally in line with the opinions of Drs. Russell and Greenstein, which had already been provided to Plaintiff on July 29, 2021 [*See* Docs. 21-5 at 237, 245; 21-9 at 640]. Defendants thus did what Subsection 2560.503-1(h)(4)(ii) required.

This determination also bears on Plaintiff's ***second*** objection—that the Report "incorrectly found that 15 days is a reasonable period" for Plaintiff to respond to Defendants' February 15, 2022 assessment [*See* Doc. 34 at 7-8]. The terms of Plaintiff's policies generally provide that Unum must decide an appeal within forty-five (45) days of written receipt [*See* Doc. 21-6 at 42]. But if Unum determined that "***special circumstances*** require an extension," it could extend the deadline [*Id.*]. The terms of the contracts between Plaintiff and Unum placed the decision regarding whether special circumstances warranted an extension in Defendants' hands. Unum did not determine that a special circumstance existed here. And Plaintiff does not persuasively argue otherwise. Given the circumstances, Defendants did not breach any duty, fiduciary or otherwise, in making that assessment. The ERISA regulations, to the extent persuasive, support that conclusion. 29 C.F.R. § 2560.503-1(i)(1)(i) rests the decision whether to grant an extension based on "special circumstances" with the plan administrator. Moreover, when the shoe has been on the other foot and Courts have been asked to assess whether a plan administrator's need for "additional time for physician review" is a "special circumstance," Courts have rejected the argument. *See, e.g.*, *Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693, 701 (E.D. Ky. 2021) (collecting cases).

Nevertheless, even after Defendants had denied Plaintiff's claim on March 4, 2022, they considered her late March 23 materials [Doc. 21-9 at 583-85]. Defendants reviewed those post-denial materials and sent Plaintiff two separate letters explaining why the late materials did not change the outcome of the review [*See id.* at 640]. Even more, Unum conducted a further review and on May 3, 2022 provided Plaintiff with a more-specific rationale for the denial of her appeal [*See* Doc. 21-10 at 894-95]. Because Defendants considered even the late, post-denial evidence Plaintiff submitted, the Court overrules Plaintiff's objections.

Next, Plaintiff argues that the Report erred in concluding that Unum conducted a full and fair review because a "health care professional" did not review her late March 23 materials [Doc. 34 at 9-10]. Under the regulations, on appeal of a denial of benefits based on "medical judgment," a plan administrator "shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3). Again, Defendants satisfied that requirement.

Defendants consulted with Dr. Winkel on appeal, and he provided an opinion after assessing Plaintiff's prior medical records and the records she timely submitted with her appeal [*See* Doc. 33 at 7-8; *see also* Doc. 21-9 at 490-94]. *See also Castor v. AT&T Umbrella Benefit Plan No. 3*, 728 F. App'x 457, 461-63 (6th Cir. 2018). There is nothing in the regulation that required Defendants to provide Plaintiff's post-denial March 23 materials to Dr. Winkel, or to any other specific doctor. *See* 29 C.F.R. § 2560.503-1(h)(3). And Plaintiff has provided no other basis in the law for her assertion. "The[se] regulations do not speak to what more an administrator can do when reviewing an appeal once an appropriate consultation with a new doctor has been made" and they do not "affirmatively preclude an administrator from seeking additional reviews." *See Castor*, 728 F. App'x at 461-63. Unum consulted a health care professional on appeal, and then

12

went beyond by considering the additional untimely evidence that Plaintiff submitted after Dr. Winkel issued his opinion. Because Unum satisfied their fiduciary duty, the Court overrules Plaintiff's objection.

### B. The Report Correctly Concludes That Plaintiff Failed To Show That She Was "Continuously Disabled" For The Elimination Period.

Plaintiff's final objections relate to the Report's conclusion that Plaintiff failed to satisfy her burden to demonstrate that she was disabled under the policies [Doc. 34 at 8-13]. Upon de novo review of the entire record before Unum, the Report, and Plaintiff's objections thereto, the Court concludes that Plaintiff has failed to show that she was "continuously disabled" as required under the policies.

The Parties agree that to meet her burden, Plaintiff must show by a preponderance that she was "continuously disabled" for 180 days starting November 2, 2020. "The bar set by the plan's requirement of 'continuous' disability. . . is a high one" [*See* Doc. 21-4 at 13-14 (LTD Policy Definition of Disability)]. *See Tranbarger*, 68 F.4th at 313. Plaintiff's position at the Hospital was sedentary, involving various supervisory and administrative tasks [*See* Docs. 25 at 1-4; 27 at 1-2; 21-7 at 353-54, 633, 734].[4] And ample evidence shows that she could perform key duties during the elimination period, precluding a finding of continuous disability.

Start with Dr. Reiser's treatment. By March 8, 2021, Plaintiff reported that she was "starting to feel like my old self again" [Doc. 21-9 at 239]. In fact, Plaintiff returned to her

---

[4] Plaintiff's benefits are tied to her full-time employment at the Hospital [Doc. 21-5 at 57-58 (LWOP Policy Definition of Disability); Doc. 21-4 at 13-14 (LTD Policy Definition of Disability); *see also* Docs. 25 at 1-4, 27 at 1-2]. In assessing the "**material and substantial duties**" of Plaintiff's "**regular occupation**," the Parties looked to Plaintiff's employment with the Hospital *and* part-time work teaching online at Fordham [Docs. 25 at 1-4, 27 at 1-2]. The Court focuses on Plaintiff's key duties at the Hospital and notes Plaintiff's duties at Fordham to the extent that Plaintiff accomplished them during the elimination period and they are similar to her key duties at the Hospital.

13

Case 1:22-cv-00265-KAC-CHS    Document 38    Filed 08/15/25    Page 13 of 17
PageID #: 8856

part-time employment at Fordham and "taught her online zoom class" "without memory aids or feeling stressed" [*Id.*]. This ability tracks with Plaintiff's duties at the Hospital as a supervisor and teacher for other social workers [*See* Doc. 21-5 at 215]. And by April 2021, Dr. Reiser had informed Plaintiff that it was up to her when she wanted to go back to work and noted that Plaintiff had partially met or resolved many of her "long term" goals for treatment; including reduced dizziness, lack of headaches, and overall improvement [Docs. 21-9 at 86, 21-7 at 251].

And consider NP Carbone's treatment. By April 6, 2021, Plaintiff suffered no "dizziness, blurred vision, eye discomfort, . . . [or] headache" [Doc. 21-8 at 381]. In fact, NP Carbone assessed that Plaintiff could "sustain her work for longer periods of time" [*Id.* at 389-90]. This shows that Plaintiff "could still perform some of her main duties." *See Tranbarger*, 68 F.4th at 315. And Plaintiff was "working 10-15 hours weekly at Fordham," further demonstrating that she could perform her main duties at the Hospital, which are similar to her job at Fordham [*Id.* at 389]. *See id.*

NP Carbone and Dr. Reiser did report to Unum that they believed Plaintiff had "a reasonable medical need to be absent from a full time work schedule on a chronic basis" [*See, e.g.*, Doc. 21-5 at 272, 302]. But they primarily based these findings on Plaintiff's own subjective reports, rather than objective medical evidence, and NP Carbone noted that Plaintiff's "commute to the work site would be problematic" [*See id.* at 302]. In contrast, Defendants' reviewing physicians focused their analysis on the objective medical evidence.

Here, the objective medical evidence showed that Plaintiff has not met her burden to demonstrate a continuous disability. Plaintiff's subjective complaints revolved around cognitive issues such as headaches, ocular impairments, dizziness, cognitive difficulties, and fatigue [*See, e.g.*, Doc. 21-7 at 110-11, 113]. But neither of Plaintiff's treating physicians ordered or performed

a neurological scan to assess an ability to work [Docs. 21-8 at 393; 21-9 at 552]. It appears from the record that the only neurological scan was the one performed in the Emergency Room on November 2, 2020 when Plaintiff's accident first occurred [*See* Doc. 21-9 at 552]. That November 2, 2020 examination "was normal," and medical professionals determined that a "CT scan of the head" was "unnecessary" [*Id.*]. While Plaintiff undoubtedly suffered symptoms, these symptoms "do not answer the more granular question about her ability to work during the period in question." *See Tranbarger*, 68 F.4th at 315 (citing *Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 502 (6th Cir. 2008); *Vance v. Comm'r of Soc. Sec'y*, 260 F. App'x 801, 806 (6th Cir. 2008)). Thus, Plaintiff has not met her burden.

As to Plaintiff's ability to commute a distance to the Hospital to work, driving was not a material and substantial duty of her job [*See* Doc. 21-7 at 353-54, 633, 734]. *See also Storm v. Aetna Life Ins. Co.*, 156 F. App'x 756, 759-60 (6th Cir. 2005) (citing *Adams v. Prudential Ins. Co. of Am.*, 280 F.Supp.2d 731, 740 (N.D. Ohio 2003); *Chandler v. Underwriters Labs., Inc.*, 850 F. Supp. 728, 738 (N.D. Ill. 1994)). Under the law, a claimant who has challenges commuting a significant distance to work "bear[s] the responsibility for choosing to live so far from work. 'A person, otherwise able to work, is in effect offered a choice: [s]he can choose either to commute the distance to h[er] job or [s]he can move closer." *See Storm*, 156 F. App'x at 759-60 (citing *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)). Plaintiff's inability to drive long distances presents a significant logistical challenge, but it does not render her "continuously disabled" under the terms of her policies.

Plaintiff also affords her various letters of support great weight, arguing that they tend to show others' observations of her abilities [*See* Doc. 21-9 at 583-85 (referencing such letters)]. But this subjective evidence alone, or combined with Plaintiff's other subjective complaints, cannot

15

Case 1:22-cv-00265-KAC-CHS     Document 38     Filed 08/15/25     Page 15 of 17
PageID #: 8858

overcome a record "devoid of any objective medical evidence of [Plaintiff's] condition" showing that she was "continuously disabled" for the elimination period. *See Martin v. Fed. Res. Bank of Cleveland*, No: 1:23CV1564, 2025 WL 1898987, at *3 (N.D. Ohio July 9, 2025). Because the records lack such evidence, and Unum highlighted strong objective medical evidence to the contrary, the Court cannot conclude that Plaintiff was "continuously disabled" for the elimination period. The record shows that Plaintiff has suffered. "But [this] does not satisfy the plan's rigid eligibility requirements, standards we are not at liberty to relax." *See Tranbarger*, 68 F.4th at 315 (citing *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 890-91 (6th Cir. 2020). Therefore, the Court overrules Plaintiff's objections and accepts and adopts those portions of the Report.

*Last*, for the first time Plaintiff raises an argument that the Court erred by failing to remand this action to Defendants [*See* Doc. 34 at 2, 11-13]. The Court need not consider this untimely argument. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[A]bsent compelling reasons," the "[P]arties . . . [cannot] raise at the district court stage new arguments or issues that were not presented to the magistrate" (citation omitted)). Nevertheless, as described above, Defendants' decision was sound. And it is unclear whether ERISA properly supports this type of relief. *See Card v. Principal Life Ins.*, 17 F.4th 620, 627 (6th Cir. 2021) (Murphy, J., concurring) (noting that the Sixth Circuit's periodic practice of remanding ERISA cases to plan administrators has no textual support in the Act). Therefore, the Court overrules Plaintiff's objection.

## III. Conclusion.

For the above reasons, the Court (1) **ACCEPTS** and **ADOPTS** the relevant portions of the Report and Recommendation [Doc. 33]; (2) **GRANTS** Defendants' "Motion for Judgment on Administrative Record" [Doc. 24]; and (3) **DENIES** Plaintiff's "Motion for Judgment on ERISA Record" [Doc. 26]. No claims remain in this action. An appropriate Judgment shall enter.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge